UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE UNITED STATES OF AMERICA

-vs-

USA REMEDIATION SERVICES, INC. and
COMPREHENSIVE EMPLOYEE MANAGEMENT,
   INC., also known as CEM, Inc. and
MARK JAMIESON,
ROBERT BIRMINGHAM,
JOHN TONER and
COREY SEAMON

02-CR-171E

MEMORANDUM

and

ORDER[1]

---

Defendants were charged with various crimes stemming from the allegedly improper removal of asbestos from the Westinghouse Electric Company Facility ("Westinghouse") adjacent to the Buffalo-Niagara International Airport.  In an indictment filed on September 6, 2002 ("the Indictment"), defendant John Toner was charged with having violated (1) 18 U.S.C. §371 (2000) (conspiracy to commit offense) (Count 1); (2) the Clean Air Act ("CAA"), 42 U.S.C. §7413(c)(1) (2003) (Counts 2-7); (3) 18 U.S.C. §1001(a)(1) (2000) (Count 9); (4) 18 U.S.C. §1001(a)(2) (2000) (Count 8); and (5) 18 U.S.C. §1001(a)(3) (2000) and 18 U.S.C. §2 (2000) (Count 10).  The Indictment alleges that Toner made a false statement to Peter Junker,[2] construction monitor for the Niagara Frontier Transportation Authority ("NFTA") — to wit, that the asbestos in the High Bay was overestimated ("Toner's Statement").  On April 25, 2003, Toner filed a motion ("Toner's Motion") seeking, *inter alia*, (1) an election by the

---

[1]This decision may be cited in whole or in any part.

[2]The NFTA retained ERM, Inc. to serve as an on-site construction monitor; ERM, Inc., in turn, hired Junker to perform such service.

prosecution of either Counts 8, 9 or 10 on grounds of multiplicity and (2) dismissal of Counts 8, 9 and 10 pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure on the ground that Toner's Statement was not within the federal government's jurisdiction because neither Toner, Toner's employer nor the NFTA was under a duty to report asbestos removal violations to the Federal Aviation Administration ("FAA").  Toner's Motion also sought certain discovery, but such will be addressed in a separate Order.  The undersigned referred Toner's Motion to Magistrate Judge H. Kenneth Schroeder, Jr. pursuant to 28 U.S.C. §636(b)(1)(B) (Supp. 2004) for consideration of the merits and legal issues raised therein.  Judge Schroeder's Report and Recommendation ("R&R") dated November 22, 2004 recommended denial of Toner's Motion.  After obtaining an extension of the filing deadline, Toner filed his objections to the R&R on December 30, 2004 ("Objections").  Oral arguments were heard and this matter was submitted on March 11, 2005.  For the reasons set forth below, this Court will overrule Toner's Objections, adopt the R&R in its entirety and deny Toner's Motion in part (Toner's discovery requests will, as noted, be addressed in a separate Order).

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" and may adopt those parts of the R&R to which no *specific* objection is raised, so long as such are not clearly erroneous.  28 U.S.C. §636(b)(1)(C).[3]  Conversely, the undersigned must make a *de novo* determination with respect

---

[3]*See also Black* v. *Walker*, 2000 WL 461106, at *1 (W.D.N.Y. 2000) (noting that it is "entirely within the province of this Court to adopt those portions of the Report and Recommendation to which no *specific objection* is made so long as such are not clearly erroneous").

to those portions of the R&R to which specific objections have been made.[4]  Rule 58.2(a)(3)

of the Local Rules of Criminal  Procedure ("LRCrP") requires parties objecting to an R&R to:

> "specifically identify the portions of the proposed findings and recommendations
> to which objection is made and the basis for such objection and shall be
> supported by legal authority."

The relevant language in LRCrP 58.2(a)(3) is verbatim of Rule 72.3(a)(3) of the Local Rules

of Civil Procedure ("LRCvP") and case law construing one is equally applicable to the other.[5]

The undersigned has previously noted that failure to comply with LRCvP 72.3(a)(3) "justifies

dismissal of the objections."[6]  Moreover, Chief Judge Arcara of this Court has noted that

LRCvP 72.3(a)(3)'s predecessor required an objecting party to "'pinpoint' specific portions of

the report and recommendation to which it objected."[7]  Furthermore, this Court will not

---

[4]28 U.S.C. §636(b)(1)(C); *United States* v. *Raddatz*, 447 U.S. 667, 675-676 (1980); *Sieteski* v. *Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y. 2000).

[5]Not surprisingly, the local rules track the language of subsection 636(b)(1)(B).  Consequently, case law construing subsection 636(b)(1)(B) is also equally applicable to a consideration of LRCvP 72.3(a)(3) and LRCrP 58.2(a)(3).  *Cf. United States of Am.* v. *Male Juvenile*, 121 F.3d 34, 38-39 (2d Cir. 1997) (applying civil cases construing standard of review set forth in 28 U.S.C. §636(b)(1)(B) when reviewing a criminal defendant's appeal of an admissibility ruling).

[6]*Galvin* v. *Kelly*, 79 F. Supp. 2d 265, 267 (W.D.N.Y. 2000) (citing *Camardo* v. *GM Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); *see also M.L. Williams* v. *Relin*, 1999 WL 454335, at *2 n.2 (W.D.N.Y. 1999) (declining to review "any portion of the R & R to which no specific objection has been made"); *Travelers Ins. Co.* v. *Monpere*, 1995 WL 591141, at *1-2 (W.D.N.Y. 1995) (holding that a "specific" objection must do more than conclusorily claim that the R&R is wrong).

[7]*Camardo*, *supra* note 6, at 382.

address any arguments not previously presented to the magistrate judge.[8]  Finally, objecting

parties may not simply re-hash arguments presented to the magistrate judge.[9]

The R&R concluded that Toner's Statement was "within the jurisdiction" of the FAA

within the meaning of subsection 1001(a) because the FAA has supervisory authority over the

NFTA's airport project pursuant to 49 U.S.C. §47106(c)(1)(B) (1997) and 49 U.S.C. §47108(a)

(1997) due to the fact that it was funded by a federal grant. R&R, at 2-4.

Toner filed his Objections to the R&R on December 30, 2004.  Toner, however,

generally failed to object *specifically* to the R&R as required by LRCrP 58.2(a)(3) — with one

possible exception that will be addressed below *de novo*.  Moreover, Toner inappropriately

reiterated arguments raised before Judge Schroeder.[10]  These objections, however, need not

be addressed.  Consequently, with the exception of Toner's objection to the R&R's analysis

with respect to subsection 47106(c)(1)(B), this Court will review the R&R for clear error.

---

[8]*Galvin*, *supra* note 6, at 267.

[9]*Mario* v. *P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either [FRCvP 72(b) or LRCvP 72.3(a)(3)]."); *Camardo*, *supra* note 6, at 382 ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge.  Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation ∗∗∗ .").

[10]Indeed, several arguments/assertions in Toner's Objections were essentially verbatim of arguments presented to Judge Schroeder.  *Compare* Toner's Motion ¶¶ 43-47 *with* Objections, at 3.  Such, however, is an inappropriate manner of objecting to an R&R.  *Camardo*, *supra* note 6, at 382.  Moreover, unlike the FAA grant at issue here, the cases cited by Toner involved unemployment insurance programs that distributed benefits that did not derive from federal funds.  *See, e.g., United States of Am.* v. *Facchini*, 874 F.2d 638, 640 (9th Cir. 1989) ("Of critical importance to our inquiry is this fact: when a state operates a federally-approved program under section 3304, not one cent of federal money goes to pay the unemployment benefits.").

Toner objected to the R&R's reliance upon subsection 47106(c)(1)(B), which he claims

to be "limited to projects involving the location of an airport, the location of a runway or a

major runway extension."  Objections, at 2.  Such objection will be reviewed *de novo*.  This

Court disagrees with Toner's narrow construction of the scope of the subsection, which governs

"project grant applications", which in turn covers airport "projects", defined as "a project,

separate projects included in one project grant application, or all projects to be undertaken at

an airport in a fiscal year, to achieve airport development or airport planning."  49 U.S.C.

§47102(12) (1997).[11]   Further, "airport development" is defined in relevant part as

"constructing, repairing, or *improving a public use airport*."  49 U.S.C. §47102(3)(A) (1997)

(emphasis added).  The NFTA's demolition of Westinghouse to expand the Buffalo-Niagara

International Airport constitutes an improvement to a public use airport.  This Court agrees with

the R&R that Toner's Statement falls within the ambit of subsection 1001(a), which provides

as follows:

> "Except as otherwise provided in this section, whoever, in any
> matter within the jurisdiction of the executive, legislative, or
> judicial branch of the Government of the United States,
> knowingly and willfully —
>
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a
>> material fact;
>>
>> (2) makes any materially false, fictitious, or fraudulent statement or
>> representation; or
>>
>> (3) makes or uses any false writing or document knowing the same to
>> contain any materially false, fictitious, or fraudulent statement or entry;

---

[11]The Court also rejects Toner's analysis concerning an "airport hazard" under subsection
47102(3)(A) because such is inapplicable and therefore irrelevant to the present case.

> shall be fined under this title or imprisoned not more than 5 years, or both."

In construing subsection 1001(a), the Second Circuit Court of Appeals has held that "there is no requirement that a false statement be made *to* the federal agency; it must only have been within the jurisdiction of any [federal] department or agency ✳✳✳ ."[12] *United States of Am.* v. *Davis*, 8 F.3d 923, 929 (2d Cir. 1993). Thus, where "a federal agency is overseeing a state agency, it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction."[13] Consequently, *Davis* affirmed a conviction under subsection 1001(a) stemming from false statements made to state prison officials who contracted with the United States Marshals' Service to house federal prisoners such as Davis. *Ibid.* Moreover, courts have upheld convictions under subsection 1001(a) for statements made to either private entities or state or local government agencies where the recipient of the statement received federal funds or was subject to federal regulation.[14]

The administration of grants for airport development and supervision of the manner in which such grants are used fall squarely within the FAA's jurisdiction. Moreover, the FAA grant agreement required the NFTA to comply with federal regulations, including the CAA.

---

[12]Subsection 1001(a) was amended in 1996, replacing "within the jurisdiction of any department or agency of the United States" with the broader language of the present statute. *See, e.g., United States of Am.* v. *Cisneros*, 26 F. Supp. 2d 24, 36 n.6 (D.D.C. 1998).

[13]*Davis*, at 929 (citing *United States* v. *Petullo*, 709 F.2d 1178, 1180 (7th Cir. 1983)).

[14]*See, e.g., United States of Am.* v. *Gibson*, 881 F.2d 318, 322 (6th Cir. 1989) (citing cases); *Petullo*, *supra* note 13, at 1180 ("A false statement may fall within section 1001 even when it is not submitted to a federal agency directly and the federal agency's role is limited to financial support of a program it does not itself directly administer."); *United States of Am.* v. *Shuemaker*, 1986 WL 6872, at *2 (W.D.N.Y. 1986) (citing *Petullo supra* note 13 for the proposition that it "is the existence of federal supervisory authority that is important, not necessarily its exercise").

Therefore, this Court finds Toner's arguments — that Toner's Statement was not made to the FAA and that there was purportedly no reporting duty or obligation owed by ERM, Inc., Junker or the NFTA — to be irrelevant.  The FAA's authority to require compliance with the CAA pursuant to its authority to act as a grant administrator is sufficient to establish jurisdiction within the meaning of subsection 1001(a) and facts sufficient to allege such jurisdiction were contained in the Indictment.  Accordingly, Toner's Statement falls within the scope of subsection 1001(a).

Moreover, Toner failed to object to the R&R's reliance on 49 U.S.C. §47108(a) (1997) and such part of the R&R will be reviewed for clear error.  This Court, however, finds no clear error in the R&R's analysis concerning subsection 47108(a), which governs project grant agreements, because the administration of such agreements falls "within the jurisdiction" of the FAA.  Nor does this Court find any clear error in the remainder of the R&R.  Accordingly, Toner's Objections will be overruled, the R&R will be adopted in its entirety and Toner's request for dismissal of Counts 8-10 will be denied.

The R&R concluded that Counts 8-10 were not multiplicitous and that the USA conceded that Toner would only be subject to punishment for one of the offenses, despite the fact that the jury would be allowed to consider all three counts or theories of liability.  Toner's Objections basically present this Court with the same argument presented to Judge Schroeder: that the prosecution seeks to multiply Toner's Statement into three separate violations of subsection 1001(a) under subparts (1) through (3).  Toner's Objections merely assert that the R&R's reliance on *United States* v. *Chacko*, 169 F.3d 140 (2d Cir. 1999) was erroneous

because *Chacko* involved a prosecution under two statutes, whereas Toner was indicted under three subparts of the same statute.  In further support of his argument, Toner cites to *United States* v. *Ansaldi*, 372 F.3d 118 (2d Cir.), *cert. denied*, 125 S. Ct. 364 (2004).

Assuming *arguendo* that Toner's objection satisfies the specificity requirements of LRCrP 58.2(a)(3), this Court nonetheless finds that the R&R was correct in concluding that Counts 8-10 are not multiplicitous because each subpart of subsection 1001(a) contains an element not required by any of the other subparts.  Although *Chacko* does not involve two charges based on different subparts of one statute, it is nonetheless applicable because it applies the *Blockburger*[15] test, which is used to examine "whether each charged offense contains an element not contained in the other charged offense."  *Chacko*, at 146. Consequently, under the *Blockburger* test, "[i]f there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted."  *Ibid.*

Furthermore, Toner's reliance upon *Ansaldi* is misplaced because such merely held that only one conspiracy can exist, despite diverse objects of such conspiracy that could amount to multiple substantive crimes.  *Ansaldi*, at 124-125.  In other words, "charging one agreement to distribute one substance as multiple conspiracies is not possible, even if the distribution of the substance itself may violate more than one law."  *Ibid.*  Toner noted that the Second Circuit Court of Appeals found multiplicity "[d]espite the fact that 'each count undoubtedly required

---

[15]*Blockburger* v. *United States*, 284 U.S. 299 (1932).

proof of something that the other did not.'"  Objections, at 6 (quoting *Ansaldi*, at 124-125).

Toner, however, conveniently omits to mention that *Ansaldi* subsequently noted:

> "Nevertheless, none of the facts peculiar to each count is relevant
> to the 'unit' of prosecution of the count.  It is not the conduct that
> underlies the offense that matters for multiplicity analysis, but
> rather the 'offense' -- in the legal sense, as defined by Congress.
> *Chacko*, 169 F.3d at 146." *Ansaldi*, at 124.

Consequently, Counts 8-10 are not muliplicitous because each subpart of subsection 1001(a)

contains an element different from the other two subparts and each subpart, therefore,

constitutes a separate "offense" as defined by Congress.[16]  Indeed, a jury could, for example,

find Toner guilty of Count 8 but not Count 10.  Moreover, before it was amended, subsection

1001(a) proscribed "'two distinct offenses' -- *viz.*, false representation and concealment of

material fact."[17]  The relevant language in subsection 1001(a), however, survived amendment,

but was enumerated into subparts (1) through (3).  Congress was undoubtedly aware of case

law when it amended subsection 1001(a) in 1996.[18]  Consequently, the amendment appears

---

[16]*See United States of Am.* v. *Piggott*, 1994 WL 228626, at *5-6 (W.D.N.Y. 1994) (applying *Blockburger, supra* note 15, and holding that two counts charging violations of different subparts of subsection 1001(a) were not multiplicitous); *cf. United States of Am.* v. *Bastion*, 112 F. Supp. 2d 378, 381 (S.D.N.Y. 2000) (applying *Blockburger* and holding that counts charging violations of subsections (k) and (g) of 18 U.S.C. §922 were not multiplicitous).  Even if this Court were to adopt the transactional analysis set forth in *Piggott*, it would nonetheless find Toner's Statement to be a transaction distinct from his omission — to wit, his failure to report asbestos removal violations in violation of his contractual duty to do so.  To the extent that Count 10 could be construed as multiplicitous under a transactional analysis, it would nonetheless be premature to require the USA to make an election at this stage. *Cisneros*, *supra* note 12, at 45.

[17]*United States of Am.* v. *Thomas*, 1990 WL 36218, at *2 (W.D.N.Y. 1990) (quoting *United States* v. *Diogo*, 320 F.2d 989, 902 (2d Cir. 1963)); *see also United States of Am.* v. *Rooney*, 37 F.3d 847, 855 (2d Cir. 1994) (discussing the two distinct offenses created by subsection 1001(a) before it was amended in 1996).

[18]*Anderson* v. *Conboy*, 156 F.3d 167, 180 (2d Cir. 1998).

to have not only expanded the jurisdictional scope of subsection 1001(a),[19] it also appears to have made explicit that Congress intended three distinct offenses rather than two. Accordingly, Counts 8-10 are not multiplicitous. Nonetheless, even assuming *arguendo* that Counts 8-10 were multiplicitous, this Court would have the discretion to allow Counts 8-10 to go to a jury because prohibition against multiple sentences for the same conduct could be remedied by merging the convictions prior to sentencing. *United States of Am.* v. *Reed*, 639 F.2d 896, 905 n.6 (2d Cir. 1981).[20] Accordingly, Toner's Objections will be overruled and the R&R will be adopted in its entirety. Nonetheless, in the event that Toner is convicted of more than one offense under subsection 1001(a), this Court will only enter judgment on one such offense.[21]

Accordingly, it is hereby **ORDERED** that Toner's Objections are overruled, that Judge Schroeder's Report and Recommendation dated November 22, 2004 is adopted in its entirety, that Toner's Motion is denied to the extent that it seeks dismissal of Counts 8-10 or an election of Counts 8, 9 or 10, that the remaining parts of Toner's Motion will be addressed in a separate Order and that the parties shall appear before Part III of this Court on June 3, 2005 at 1:00 p.m. (or as soon thereafter as they may be heard) to set a date for trial.

DATED:     Buffalo, N.Y.

           April 27, 2005

                                              */s/ John T. Elfvin*
                                              JOHN T. ELFVIN
                                              S.U.S.D.J.

---

[19]*See Cisneros*, *supra* note 12, at 36 n.6.

[20]Jury consideration of Counts 8-10 would not prejudice Toner because the same evidence would be presented in any event and the jury would merely ascertain which, if any, Counts were proven by the prosecution. Moreover, a curative jury instruction could address lingering concerns that Toner may have. *Cf. United States of Am.* v. *Miller*, 26 F. Supp. 2d 415, 423 (N.D.N.Y. 1998).

[21]*United States of Am.* v. *Ball*, 470 U.S. 856, 965 (1985).